UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

Paul Lazzaro,

                                  Plaintiff,

-v.-                                            5:02-CV-01452 (NPM)

International Union, United
Automobile, Aerospace & Agriculture
Implement Workers of America (UAW),
Local Union 1826; Oberdorfer LLC;
Richard Oppedisano; Dave Windhausen;
and Neil Falcone,

                                  Defendants.

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| PAUL LAZZARO<br>Plaintiff, *Pro Se*<br>9512 Glengeariff Drive<br>Brewerton, New York 13029 | |
| HANCOCK ESTABROOK<br>Of Counsel to Plaintiff<br>1500 MONY Tower I<br>Syracuse, NY 13221 | JOHN T. McCANN, ESQ. |
| SATTER & ANDREWS<br>Attorneys for Defendants,<br>UAW Local Union 1826<br>217 South Salina Street<br>Syracuse, New York 13202 | ROSS P. ANDREWS, ESQ. |

1

Neal P. McCurn, Senior District Judge

## MEMORANDUM-DECISION and ORDER

### I. Introduction

Plaintiff, Paul D. Lazzaro ("Lazzaro"), appearing *pro se*,[1] commenced this action in Supreme Court for the State of New York in Onondaga County on September 19, 2002 against Defendants, International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America (UAW), Local 1826 ("UAW Local 1826" or "the Union"); Oberdorfer, LLC ("Oberdorfer" or "the Company"), Richard Oppedisano, David Windhausen, and Neil Falcone. In his complaint ("the Compliant"), Lazzaro alleges, among other things, the violation of an agreement between the Union and Oberdorfer. Defendants removed the action to this court pursuant to section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), which provides that federal court has exclusive jurisdiction over such claims. All parties recently executed a Stipulation of Dismissal, removing defendants Oberdorfer, Richard Oppedisano, David Windhausen, and Neil Falcone from the action. Therefore, UAW Local 1826 is the only remaining defendant.

Presently before the court is a motion for summary judgment by the Union against Lazzaro.[2] In the Complaint, Lazzaro alleges three causes of action, to wit,

---

[1] At the time Lazzaro commenced this action, he was represented by counsel. However, Lazzaro now appears *pro se*, with the law firm of Hancock & Estabrook assisting him solely for purposes of opposing the present motion.

[2] The moving papers were originally filed prior to the Stipulation of Dismissal and thus include arguments on behalf of the three individually named defendants as well as the Union. Therefore, the court need only address the arguments as they relate to the Union. Moreover,

2

breach of contract, breach of the duty of fair representation ("BFR claim"), and conspiracy.

Oral argument was heard regarding the present motion on January 10, 2005 in Syracuse, New York. At that time, upon consent of counsel, the court dismissed Lazzaro's breach of contract and conspiracy claims. The court further granted summary judgment on Lazzaro's BFR claim for failure to exhaust remedies. Following is the court's reasoning therefor.

## II.   Factual Background

Lazzaro has been an employee of Oberdorfer or its predecessors ("the Company") since 1978. During that time he has held several Union offices, including the office of Chief Committeeman, which he held for nine years until 2002, at which time he did not seek reelection. In September 1997 the Company appointed Lazzaro to the position of "facilitator", which included an increase in his hourly wage from $13.25 to $19.15. In 1999, when the Company was purchased by new owners, Lazzaro resumed his former position of "core finisher", although his hourly rate remained unchanged. At some point thereafter, Lazzaro's position changed again to that of "core maker".

According to Lazzaro, in 1999 the Company's new purchasers promised the Union that under their ownership, no union employee would be forced to take a pay reduction. That agreement came about as an oral promise and was never reduced to writing.

In 2002, the Union negotiated a new contract with the Company. During negotiations, the Company agreed to equalize the wages of several employees,

---

Oberdorfer's motion for summary judgment, also filed prior to the Stipulation of Dismissal, need not be considered.

including Lazzaro, whose hourly rates were not consistent with the work they performed. As a result of the new contract, executed by the Union and the Company in July 2002, and ratified by the Union membership, Lazzaro's pay was reduced from $20.85 to $12.81 per hour, which is the top hourly rate for a "core maker."

Although at the ratification meeting with the Union membership, Lazzaro told Union President Richard Oppedisano, "I will see you in court[,]" Aff. of Paul D. Lazzaro, Dec. 1, 2004, at ¶ 36, Dkt. No. 44, Lazzaro did not challenge the ratification of the contract containing the wage equalization agreement before the Union membership, nor did he undertake any appeal of same to the UAW under the International Union's constitution ("the Union Constitution"). According to Lazzaro, no one from the Union ever told him that he could appeal a negotiated contract settlement to the International Union. See id. Lazzaro affirms, based upon his experience as a Union representative, that he understands the appeals process to be limited to matters surrounding grievance denials, and that it is not available to challenge settlements reached as a result of collective bargaining. See id.

On July 30, 2002, Lazzaro filed a grievance with the Company regarding his reduced wage. The grievance was signed by a Union steward. The Company thereafter denied the grievance, and on August 6, 2003, after reviewing same, the Union determined the grievance was without merit and "dropped" it. Lazzaro could have appealed the Union's decision to drop his grievance, first to the membership and then to the International Union, but he did not do so. Had Lazzaro appealed and prevailed, his grievance could have been reinstated and arbitrated.

4

### III. Discussion

#### A. Summary Judgment Standard

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). See also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82 (2d Cir. 2004). "[I]n assessing the record to determine whether there is a genuine issue as to a material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought[.]" See Security Ins., 391 F.3d at 83, citing Anderson V. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505 (1986). While the initial burden of demonstrating the absence of a genuine issue of material fact falls upon the moving party, once that burden is met, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial," see Koch v. Town of Brattleboro, Vermont, 287 F.3d 162, 165 (2d Cir. 2002), citing Fed. R. Civ. P. 56(c), by a showing sufficient to establish the existence of every element essential to the party's case, and on which that party will bear the burden of proof at trial, see Peck v. Public Serv. Mut. Ins. Co., 326 F.3d 330, 337 (2d Cir. 2003), cert. denied, 124 S.Ct. 540 (2003).

#### B. BFR Claim

In the Complaint, Lazzaro alleges the Union breached its duty of fair representation to him when it (1) introduced wage equalization as a subject of contract negotiations with the Company, and (2) failed to pursue his grievance.

See Compl. ¶¶ 18-19. Initially, it is important to note that in his opposition papers, Lazzaro concedes that he failed to properly exhaust his remedies with the Union regarding their refusal to pursue his August 2002 grievance. Therefore, the court will concentrate its analysis of Lazzaro's BFR claim on the remaining alleged basis for same, to wit, the Union's introduction and negotiation of wage equalization as a subject of collective bargaining.

The LMRA imposes upon a union the duty "to represent fairly all union members in the negotiation of a collective bargaining agreement." Sim v. New York Mailers' Union Number 6, 166 F.3d 465, 472 (2d Cir. 1999). Such a duty is breached when a union's "conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith." White v. White Rose Food, 237 F.3d 174, 179 (2d Cir. 2001), quoting Marquez v. Screen Actors Guild, Inc., 525 U.S. 33, 44, 119 S.Ct. 292, 300 (1998). In order to prevail on a BFR claim, a plaintiff must establish that the defendant union breached said duty, and "that there was a causal connection between the union's wrongful conduct and [the plaintiff's] injuries." White, 237 F.3d at 179, quoting Spellacy v. Airline Pilots Ass'n - Int'l, 156 F.3d 120, 126 (2d Cir. 1998).

Here, the Union argues that it is entitled to summary judgment on Lazzaro's BFR claim because he failed to first exhaust the appeals procedure set forth in the Union Constitution before filing said claim in this court. Under the LMRA, the court has discretion to determine whether exhaustion of intra-union remedies is required where, as here, an employee alleges its union breached its duty of fair representation. See Maddalone v. Local 17, United Bhd. of Carpenters & Joiners of Am., 152 F.3d 178, 186 (2d Cir. 1998), citing Clayton v. International Union, UAW, 451 U.S. 679, 689, 101 S.Ct. 2088, 2095 (1981). In deciding whether

6

exhaustion is required, the court "must balance the right of union members to institute suit against the policy of judicial noninterference in union affairs." Johnson v. General Motors, 641 F.2d 1075, 1079 (2d Cir. 1981). The following three factors have been identified as relevant to this determination:

> [1] whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; [2] whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks; and [3] whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim.

Clayton, 451 U.S. at 689, 101 S.Ct. at 2095.

### a. Hostility

Although Lazzaro does not directly allege, either in the Complaint or in his opposition papers, that he failed to appeal the Union's decision to ratify the contract due to union officials' hostility toward him, the underlying basis for his breach of the duty of fair representation claim is that the local Union officials were essentially targeting him for wage reduction. Nonetheless, as the Union correctly notes, "hostility at the local level is not enough to excuse exhaustion" and, in order to be excused from exhausting intra-union remedies, a "member must establish hostility at every step of the [appeal]." Austin v. General Motors Corp., 94-CV-832A, 1995 WL 866220, at *7 (W.D.N.Y. Dec. 1, 1995) (internal citations omitted). To be sure, at oral argument, Lazzaro's counsel noted that Lazzaro did not address the issue of hostility by upper level Union officials because he was not aware that he could pursue an appeal of the 2002 contract after its ratification. In any event, where, as here, there was no evidence of hostility toward plaintiff at the union's international level, said plaintiff was unable to establish the requisite level

of hostility to be excused from exhausting his intra-union appeals process. See id. Therefore, the first Clayton factor does not weigh in favor of a finding that Lazzaro should be excused from exhausting his intra-union appeals.

### b.    Adequacy of Internal Union Appeals

Initially it should be noted that the parties disagree as to whether the internal union appeals process was available to address Lazzaro's complaint regarding the wage equalization provision in the 2002 contract. According to Lazzaro, said process is not available to appeal contract terms once the contract is ratified. The Union, argues, however, without accepting the truth of Lazzaro's contention about post ratification appeals, that Lazzaro could have appealed the Union's negotiation of the wage equalization provision prior to ratification of the 2002 contract.

Pursuant to Article 33, Section 1 of the Union Constitution, any member has the right to appeal "any action, decision or penalty" by, among others, the International Union or its administrative arms or subordinate bodies, and "a Local Union, or any of its units, committees, officers, committeepersons or stewards." See id. at Art. 33, § 1. Moreover, according to Article 33, Section 5,

> It shall be the duty of any individual or body, if aggrieved by any action, decision or penalty imposed, to exhaust fully the individual or body's remedy and all appeals under this Constitution and the rules of this Union before going to a civil court or governmental agency for redress.

Ex. A to Aff. of Neil Falcone, Sept. 27, 2004, Dkt. No. 28: UAW Constitution, Art. 33, § 5.

The appeals process is set forth in the Union Constitution as follows:

> The normal route of appeal is: FIRST, to the membership or delegate body immediately responsible for the official, officer, action or

8

decision under challenge; SECOND, to the International Executive Board, unless the appeal begins there; and THIRD, to the Convention Appeals Committee or Public Review Board, as may be appropriate.[3]

Id. at Art. 33, § 2(a).

The Union correctly argues that the UAW's appellate process is adequate to award Lazzaro the monetary damages he seeks. See UAW Const. Art. 12, §§ 1, 3, Art. 32, § 3(a). See also Violas v. General Motors Corp., Civ. No. 95-0487, 1997 U.S. Lexis 16247, at *54 (D. N.J. Jan. 30, 1997); Jarrel v. Bomag, 728 F.Supp. 468, 476 (S.D. Ohio 1989). Moreover, the Union contends, had Lazzaro commenced the appeals process timely, same could have resulted in an order to the Local Union to abandon its course of bargaining and a suspension of local union officials if they persisted, as well as the International Union negotiating a contract with the Company that is devoid of wage equalization provisions. See UAW Const. Art. 12, §§ 3, 16.

---

[3] In its moving papers, see Def.'s Mem. of Law in Support of Summ. J at 14-15, n.7, the Union adequately describes the structure of these appellate bodies as follows:

The International Executive Board ("IEB") is comprised of international and regional officers elected by the UAW convention. See Ex. A to Aff. of Neil Falcone, Sept. 27, 2004, Dkt. No. 28: UAW Constitution, Art. 10, § 1. Upon receiving an appeal from a member or subordinate body, the IEB appoints a two-member Appeal Committee to consider the appeal. See id. at Art. 33, § 3(d). Appeal to the IEB results in a hearing in which the member has a right to counsel, to produce evidence and submit a brief. See id. at Art. 33, § 4(f)-(h). The Appeal Committee reports its findings to a nine-member committee of the IEB which rules on the appeal. See id. at Art. 33, § 3(d).

The Convention Appeals Council ("CAC") is composed of one member and two alternates selected by lot from among the convention delegates from each international region. See id. at Art. 33, § 4(e).

The Public Review Board ("PRB") is composed of seven "impartial persons of good public repute not working under the jurisdiction of the UAW or employed by the International Union or any of its subordinate bodies." Id. at Art. 32, § 1. The PRB has jurisdiction where the appellant has alleged before the IEB that the matter was improperly handled because of fraud, discrimination or collusion with management, or that the disposition or handling of the matter was devoid of any rational basis. See id. at Art. 33, § 4(i).

Lazzaro contends that it is materially disputed whether he could have appealed his reduced hourly wage after the contract was ratified. Moreover, Lazzaro argues, even if the internal union appeals process was available to him for an appeal of the Union's introduction of wage equalization as a subject of bargaining, he was not informed of same until after the contract was ratified. The court is unable to reconcile this argument with Lazzaro's previous affirmation that he was present at the Union's ratification meeting. See Lazzaro Aff. at ¶ 36. Clearly Lazzaro could have appealed the Union's decision to ratify the 2002 contract, which included the wage equalization provision, at the ratification meeting with the Union membership. If not successful, he could have then appealed to the International Executive Board, and finally to the Convention Appeals Council or Public Review Board as appropriate, in accordance with the Union Constitution.

Lazzaro also argues that the exhaustion requirement should not apply to him because he was unaware that any appeal procedures existed. This contention seems particularly dubious, considering Lazzaro's years of experience as a union official. Although Lazzaro's experience with union appeals may have been limited to grievance issues, he testified that he was aware that an appeal process existed in the Union Constitution but he did not think he was required to use it. See Dep. of Paul Lazzaro, March 24, 2004, 45:17-46:6, Dkt. No. 28. In Maddalone, the Second Circuit found that the lower court did not abuse its discretion when it held that the plaintiff there, like Lazzaro here, should have known of the appeal procedures because he was a union officer. See Maddalone, 152 F.3d at 187.

The Union also correctly notes that many courts have rejected the ignorance

10

argument from other UAW members, because the member newsletter, *Solidarity*, regularly publishes the procedures. See Violas, 1997 U.S. Lexis 16247, at *58; Jarrel, 728 F.Supp. at 475-76. According to Neil Falcone, International representative of the UAW for Syracuse, New York, *Solidarity* continues to regularly publish the appeal procedures and is still sent to all UAW members on a regular basis. See Aff. of Neil Falcone, Dec. 14, 2004 at ¶ 5, Dkt. No. 52.

Therefore, because by his own admissions, Lazzaro was aware of the existence of the appeals procedure in the Union Constitution, and he was present at the Union ratification meeting, and because said appeals procedure provides for the award of the monetary damages Lazzaro seeks in this lawsuit, the second Clayton factor also does not weigh in favor of a finding that Lazzaro should be excused from exhausting his internal union appeals.

### c.     Unreasonable Delay

Lazzaro testified that, although he never researched the Union Constitution to discover what the appeal procedure required, he believed it to be "a long drawn out process." See Lazzaro Dep., at 45:17-46:6, Dkt. No. 28. Courts have noted that the reasonableness of a union's appeal procedures may be established with a showing that a member can likely obtain relief within four months. See Johnson, 641 F.2d at 1080; Wrightson v. General Motors Corp., No. Civ. -85-1385E, 1988 U.S. Dist. Lexis 16069 (W.D.N.Y. June 22, 1988). The Union notes that the Union Constitution provides for an expedited process, whereby regional and international Union officers may hear and decide appeals if the standard bodies with appellate jurisdiction will not have a regularly scheduled meeting to hear an appeal within 45 days of its filing. See UAW Const. at Art. 33, § 3(a)-(c). Therefore, because Lazzaro could have either obtained the relief he sought or

11

completed the Union's appeals process within four months, see <u>Wrightson</u>, 1988 U.S. Dist. Lexis at *3, the third and final <u>Clayton</u> factor also does not weigh in favor of a finding that he should be excused from exhausting his intra-union appeals.

## IV.  Conclusion

Upon consent of counsel appointed to assist Plaintiff in opposing the present motion, Counts I and III of the Complaint are dismissed. For the foregoing reasons, Count II of the Complaint is dismissed for failure to exhaust intra-union remedies. Therefore, the defendant, Union's motion for summary judgment on the entire Complaint is hereby granted. The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.

DATED: May 16, 2005
Syracuse, New York

*Neal P. McCurn*
Neal P. McCurn
Senior U.S. District Judge